**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF NEW JERSEY**

22 South Clinton Avenue
Station Plaza 4, 4th Floor
Trenton, New Jersey 08609

**RICHARD COUGHLIN**
FEDERAL PUBLIC DEFENDER

**CHESTER M. KELLER**
FIRST ASSISTANT

(609) 989-2160  Telephone
(609) 989-2153  Facsimile

April 8, 2020

VIA EMAIL
The Hon. Anne E. Thompson
United States District Judge
402 East State Street
Trenton, New Jersey 08608

**Re: Born Rush Crim. No. 09-174**

Dear Judge Thompson:

Please accept this letter in lieu of a more formal brief requesting a modification of the terms of supervised release for Mr. Born Rush.  Mr. Rush pled guilty to a violation of his supervised release on January 28, 2020 and was sentenced by the Court to time served and an additional three years of supervised release on the same day.  The Court imposed a special condition that Mr. Rush reside for three months at a Residential Reentry Center.  After the Court imposed its sentence, Mr. Rush remained incarcerated until February 27, 2020, while arrangements were made for him to enter Toler House.  He continues to live at Toler House at this time.  For the reasons detailed below, he now requests that the Court permit him to leave Toler House early and to instead enter into a period of home confinement.

**The COVID-19 National Emergency**

An epidemiological consensus has emerged that COVID-19 will spread rapidly among people living inside jails and other congregate environments where they eat and sleep in close proximity to one another.  This has been borne out by the explosion of confirmed cases in jails and prisons across the country.  Rikers Island in New York City has the highest known infection rate in the world, at 6.59%.  *See https://legalaidnyc.org/covid-19-infection-tracking-in-nyc-jails/*.  The Bureau of Prisons reports that they have 241 confirmed cases of COVID-19 among inmates and 73 among staff.  Two nurses just died at the Hudson County Jail.  *See https://www.northjersey.com/story/news/hudson/2020/04/06/two-hudson-county-jail-nurses-die-coronavirus-complications/2954964001/*.  In order to stem the tide of the crisis and reduce infection rates overall, courts have begun to take actions to release large numbers of incarcerated people, including here in New Jersey.  *See In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19).

The only known effective countermeasures to the spread of the virus are social distancing and elevated levels of personal hygiene, both of which are difficult if not impossible to attain in a

congregate setting.  *See https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.*  The setting inside of Toler House presents enormous challenges for preventing the transmission of the virus.  Mr. Rush currently shares a dormitory with five other men, all of whom leave the house during the day to go to work.  The chances that he will become infected while living at Toler House are clearly higher than they would be if he is permitted to transition to home confinement, where he will be better able to socially distance himself from others.

When the virus finds large numbers of people to infect within jails, prisons, and halfway houses, it imperils the health not only of those who live and work in these institutions, it imperils us all.  Wherever higher rates of transmission occur, they lead to increased strain on the healthcare system that is experiencing critical shortages of lifesaving supplies from personal protective equipment to ventilators.  *See https://www.nytimes.com/2020/04/02/health/coronavirus-drug-shortages.html.*

**The Proposed Modification**

Mr. Rush requests that he be permitted to leave Toler house before completing the three months originally ordered by the Court.  United States Probation Officers have already approved a potential residence for Mr. Rush where he can safely serve a period of home confinement instead of continuing to be exposed to an elevated risk of infection at Toler House.  He would live with his close friend, Shalika Whitley, in Long Branch, New Jersey.  Mr. Rush would be able to seamlessly continue his counselling sessions, as they have already moved to a telephonic format.  Mr. Rush reports, and defense counsel has learned from other attorneys, that some other residents of Toler House have already left facility early for home confinement due to the risks presented by COVID-19.

**Conclusion**

Mr. Rush has been at Toler House for five weeks, and he spent four weeks in detention waiting for a bed there after this Court imposed a time served sentence.  Given the extraordinary crisis that is unfolding, he respectfully requests that the conditions of his supervision be modified to permit home confinement at an approved residence instead of remaining at Toler House.

Sincerely,

/s/ Benjamin West

Assistant Federal Public Defender
District of New Jersey
(609) 649-8364
benjamin_west@fd.org

| cc: | AUSA Eric Boden | VIA EMAIL |
|---|---|---|
| | USPO Carolyn Stevens | VIA EMAIL |

_____

800-840 Cooper Street, Suite 350, Camden, New Jersey  08102  (856) 757-5341

1002  Broad Street, Newark, New Jersey  07102  (973) 645-6347